CLERK'S OFFICE
A TRUE COPY
Dec 20, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

In the Matter of the Tracking of
*(Identify the person, property, or object to be tracked )*

Vehicle bearing license plate MN JRP840; VIN:
2GNALBEK3H1539110 and vehicle bearing license
plate WI AUD4705; VIN: 1G1ZT51866F269117;

)
)
)
)
)
)

Case No. 23-M-539 (SCD)

**Matter No.: 2023R00308**

## TRACKING WARRANT

To:     Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district;    ☐ is not now located in this district, but will be at execution;    ☐ the activity in this district relates to domestic or international terrorism;    ☐ other: _____ .

        I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)* ☐ using the object    ☑ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

        ☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: Vehicle bearing license plate MN JRP840; VIN: 2GNALBEK3H1539110 and vehicle bearing license plate WI AUD4705; VIN: 1G1ZT51866F269117.

        **YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by __12-30-23_____ *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until __2-3-24_____ *(no later than 45 days from the date this warrant was issued)*.  The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☐ into the vehicle described above        ☐ onto the private property described above
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

        Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both
return it to *(United States Magistrate Judge)*  Hon. Stephen C. Dries _____ and — unless delayed notice
is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

        ☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510).  I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of  March 19, 2024 _____ .

Date and time issued:  12-20-23. 1:55 pm _____

City and state:  Milwaukee, Wi _____

_____
*Judge's signature*

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

Case No.

## Return of Tracking Warrant With Installation

1.  Date and time tracking device installed: _____

2.  Dates and times tracking device maintained: _____

3.  Date and time tracking device removed: _____

4.  The tracking device was used from *(date and time)*: _____

    to *(date and time)*: _____.

## Return of Tracking Warrant Without Installation

1.  Date warrant executed: _____

2.  The tracking information was obtained from *(date and time)*: _____

    to *(date and time)*: _____.

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*



CLERK'S OFFICE
A TRUE COPY
Dec 20, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>Vehicle bearing license plate MN JRP840; VIN:<br>2GNALBEK3H1539110 and vehicle bearing license<br>plate WI AUD4705; VIN: 1G1ZT51866F269117; | )<br>)<br>)<br>)<br>)<br>)    Case No. **23-M-539 (SCD)**<br><br>**Matter No.: 2023R00308** |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __18__ U.S.C. § __922(a)(1)(A)__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both: Vehicle bearing license plate MN JRP840; VIN: 2GNALBEK3H1539110 and vehicle bearing license plate WI AUD4705; VIN: 1G1ZT51866F269117

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**PAUL KOZELEK**    Digitally signed by PAUL KOZELEK
Date: 2023.12.20 13:42:58 -06'00'

*Applicant's signature*

SA Paul Kozelek, ATF

*Applicant's printed name and title*

Sworn to before me and .Telephonically.

Date: __12-20-23__

*Judge's signature*

City and state: __Milwaukee, Wisconsin__    Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A SEARCH WARRANT EXTENSION
### Matter No.: 2023R00308

I, Paul Kozolek, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the locations of a vehicle more particularly described as a White 2017 Chevrolet Equinox, bearing Minnesota license plate JRP840, VIN 2GNALBEK3H1539110.  (hearafter "**SUBJECT VEHICLE 1**") and a Green 2006 Chevrolet Malibu bearing Wisconsin license plate AUD4705, VIN 1G1ZT51866F269117. (hereafter **"SUBJECT VEHICLE 2"**).

2.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud), are being committed or will be committed by Torion R. BROOKS and others known and unknown.

3.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed in such capacity since January of 2020.  As an ATF Special Agent, I have completed training in cases related to the unlawful use of firearms, firearms trafficking, drug trafficking, arson, and explosives.

4.    Prior to my employment with ATF, I was a Sheriff's Deputy with the Jackson County Sheriff's Office in Black River Falls, WI. My duties included patrol, drafting and executing search warrants, and investigations related to state and county criminal violations.

5.    Before my tenure with the Jackson County Sheriff's Office, I served with the United State Marine Corps from 2004 until 2008, and United States Marine Corps Reserve from 2011 until 2014. I left the Marine Corps as an E6/Staff Sergeant holding the billet of Platoon Commander.

6.    I received my bachelor's degree in Criminal Justice Administration from Viterbo University in La Crosse, Wisconsin, in 2016.

7.    As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

8.    Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

9.    I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the way individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to

2

conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

10. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

11. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

12. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

13. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

### TORION BROOKS'S PURCHASE OF FIREARM PARTS

13.    On August 24, 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Gabriel Lowrance initiated a case related to a complaint made to the Milwaukee Police Department by CBC Industries, a business located in North Charleston, South Carolina. CBC Industries is a manufacturer of firearms and firearms accessories which are sold online via their website.

14.    The evidence below shows that Torion R. BROOKS is likely committing credit and mail fraud to purchase AR-15 firearm parts, assemble fully functional firearms, and sell the firearms without the proper federal firearms license.

15.    The complaint from CBC industries concerned approximately 29 attempted and 2 completed online purchases of AR-15 firearm parts, which totaled approximately $35,000.00 of AR-15 upper receivers and other AR-15 accessories. All of the purchases were through CBC's website, and several of the orders were placed under the name Torion R. BROOKS or through telephone numbers associated to Torion BROOKS.

16.    The purchases took place between 7/27/2023 and 8/22/2023. Although BROOKS was the buyer for all the AR-15 parts and accessories, the purchases were flagged as possibly fraudulent because the billing addresses were different from the delivery addresses. CBC's records showed billing addresses from approximately fourteen (14) different states within the United States and shipping addresses at the following locations: 1526A W. Congress Milwaukee, WI; 4710 N. 30th St, Milwaukee, WI; and 3219 N 46th St, Milwaukee, WI.

4

17.     In two of the attempted purchases, CBC communicated the user of the email address, "billyj1730@gmail.com." In an email communication dated 7/24/2023, CBC Industries requested a front and back photo of identification to verify the purchaser's identity to combat fraudulent purchases and activity. In response, the user of billyj1730@gmail.com responded by sending front and back photos of an Arizona driver's license for Torion R. BROOKS (DOB: 2000). In an unrelated Milwaukee Police Department contact, BROOKS said his address was 19721 Emperor Blvd Queen Creek, AZ, 85142. Case agents also confirmed BROOKS' address after reviewing Arizona driver's license records.

18.     Two of the purchases were completed and delivered to addresses in Milwaukee, WI. The first completed transaction was an order of 6 AR-15 upper receivers, which was placed on or about 7/24/2023 and totaled approximately $990.00. These items were shipped by CBC industries via Federal Express to Torion BROOKS at 1526A W. Congress, Milwaukee, WI, and were delivered and signed for on 7/31/2023. When an AR-15 upper receiver component is paired with an AR-15 lower receiver, the items may readily be converted to a working firearm.

19.     The second completed order from CBC Industries was placed on or about 8/18/2023, and five (5) items related to AR-15 and AR-15 parts and accessories, totaling approximately $1,170.00, were delivered to Torion BROOKS at 3219 N 46th St, Milwaukee, WI.

**CELLPHONE USAGE**

20.     The cellphone number 872-243-is a number known to your affiant because it is associated with Torion BROOKS as it was a telephone number he used when purchasing items from CBC Industries. Also, databases available to law enforcement show that this cellphone number is associated with BROOKS. Case agents reviewed AT&T telephone toll and subscriber

5

records related to the phone number 872-243-4797. The information was obtained via federal grand jury subpoena. Subscriber information for the phone number indicated the phone number to be registered "Bradford Brown". The contact home email was antdbrooks@gmail.com.

21.     Within the toll information, approximately one-hundred sixteen (116) phone calls were made or received by 872-243-4797 to various Federal Firearms Licensees (FFLs) in various states between 5/1/2023 and 8/30/2023. The phone calls included calls to CBC Industries.

22.     Your affiant is aware that jail phone calls from Fox Lake Correctional Center, located in Fox Lake, WI. On 7/29/2023 a phone call is made to the phone number 872-243-4797. Your affiant knows this phone number to be associated Torion BROOKS through CBC Industries records, and databases available to law enforcement. Case agents recognized the voice placing the call as "Cortez Brooks (hereafter referred to as Cortez)," because Cortez Brooks identifies himself during previously reviewed jail calls. A male voice answers the call which sounds like that of an individual Cortez referred to as "Torion" in previously reviewed jail calls. Because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number 872-243-4797 is associated with Torion BROOKS, the affiant believes the person on the call is Torion BROOKS.

23.     During the call, BROOKS stated he is "building these guns" and has learned how to build the AR-15 rifles. BROOKS also spoke about other firearms he was building and described them as "little ones" and "real small", leading your affiant to suspect he could also be speaking about AR-15 pistols. During the call, BROOKS described the firearms "ghost guns" and described them as "big enough" to fit under a shirt. Within the same call, Cortez asked BROOKS if he is "making those mother fuckers yourself" or "breaking them down." BROOKS stated he is "making the mother fuckers" and is getting the parts "offline." BROOKS stated if he

sells them, he is getting $1,500 and they do not cost him more than $300-$400. BROOKS stated at the time he was not trying to sell them and was looking to "stock up on my shit". BROOKS further stated he has been spending his time "putting them together", leading your affiant to believe he is discussing converting AR-15 receivers into fully functioning firearms. Your affiant is aware that the slang term "ghost gun" describes a privately made firearm which has no serial numbers. These privately manufactured firearms have become sought after by those engaged in criminal activity because they are difficult for law enforcement to trace back to a specific possessor.

24.     Within the same call, Cortez also instructs BROOKS to "fuck with" an unknown individual. Cortez asks if "they" are five inches. BROOKS stated they are the same size as a "micro draco" and shoot 7.62 and 5.56 and the same bullet as an "AK". Your affiant knows 7.62 and 5.56 to be calibers of ammunition that can be fired by an AR-15.

25.     Within the same call, Cortez and BROOKS discuss apparent narcotics trafficking. Cortez stated he wished BROOKS still had the "ice connect." Your affiant is aware through training and experience "ice" to be a term to reference methamphetamine. Your affiant also knows the term "connect" to be a term to reference a source for narcotics. BROOKS stated he would attempt phone calls to obtain more information. Cortez also asked BROOKS about an individual by the name "Rocco." BROOKS stated he had previously gone "all the way out of town" to go get "some shit" for "Rocco." BROOKS described this as being "hours away." Cortez asked if BROOKS knew Rocco's "plug" Your affiant knows "plug" to be a term to reference a source of narcotics.

26.     During this same call, Cortez and BROOKS discuss where BROOKS is in Milwaukee. BROOKS stated he is on 14th near Atkinson. Your affiant knows BROOKS to

associate with individuals who have previously resided at 3900 N. 14th St. in Milwaukee which is approximately two blocks north of the intersection of 14th St and Atkinson St. in Milwaukee. BROOKS also stated he is near 29th and Burleigh. Your affiant also knows BROOKS to have used the address 3219 N 46th St, Milwaukee, WI for delivery of firearm parts and accessories. Your affiant knows this address is near the intersection of 29th St. and Burleigh St in Milwaukee. The name "Todrian Franklin" also used for attempted orders is known to your affiant to use the address of 3020 N 29th St, Milwaukee, WI (Wisconsin DL) which is near the intersection of 29th St and Burleigh St, in Milwaukee.

27. On 8/20/2023 Cortez called BROOKS at 872-243-4797. Again, because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number 872-243-4797 is associated with Torion BROOKS, the affiant believes the person on this call is Torion BROOKS.

28. During the call, BROOKS tells Cortez he has "been putting these mother fuckers together" and is "waiting on a package right now." Your affiant is aware of a delivery from CBC Industries of firearm parts and accessories was delivered to Torion BROOKS at 3219 N 46th St, Milwaukee, WI on 8/20/2023. BROOKS stated again he has been "building these mother fuckers" and has acquired tools, drills, and does not have to go into the "store" anymore. BROOKS stated he has everything he needs, and he was "just sitting in the crib doing that shit."

29. Within the same call, Cortez asked BROOKS if BROOKS had contacted an unknown individual. BROOKS stated he has not spoken to the individual in approximately one week. BROOKS further stated, "I got 30 of them things for you again." Your affiant is aware at the time of the phone call BROOKS had made approximately thirty attempted orders of firearms parts and accessories from CBC Industries.

30.    Within the same call, Cortez asked when BROOKS will be able to visit him. BROOKS stated he does not have a car and Cortez offered to get BROOKS a rental car. BROOKS stated he is waiting on "my package" and indicated he is at "my homie crib up here on Burleigh."  Your affiant is aware 3219 N. 46th St to be approximately two (2) blocks north of W. Burleigh St in Milwaukee, WI. Your affiant knows Todrian FRANKLIN, a known CBC purchaser, is known to have a Wisconsin driver's license address registered at 3020 N. 29th St, Milwaukee, WI.  Your affiant knows this address to be just south of the intersection of 29th St. and Burleigh St. in Milwaukee.

31.    Within the same call, BROOKS stated he is trying to sell one (1) "of them mother fucking things".  When asked by Cortez how much they are being sold for, BROOKS stated the "Lowest I will take is twelve."  Cortez asked why BROOKS does not "pull up on dude" to which BROOKS stated individuals "act like they want to buy". BROOKS also stated he knows an individual who already had "the lower" and wanted the "upper part." Your affiant is aware the orders from CBC Industries by BROOKS included AR-15 upper receiver components and when paired with a lower receiver, the items can be easily converted into a firearm.

32.    On 8/20/2023 a Cortez placed a second phone call to BROOKS who was using 872-243-4797.  Again, because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number 872-243-4797 is associated with Torion BROOKS, the Affiant believes the person on the call is Torion BROOKS.

33.    BROOKS stated he "just got my mother fucking package."  Your affiant is aware, BROOKS received a package from CBC Industries on the same date at 3219 N 46th St, Milwaukee WI.

9

34.     Your affiant is aware of a jail call which occurred on 1/11/2023, in which Cortez called BROOKS who was using 872-243-4797. Again, because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number 872-243-4797 is associated with Torion BROOKS, the affiant believes the person on the call is Torion BROOKS.

35.     During this call BROOKS stated he is in an airport and has been "up for 24 hours" and is on his way to "Houston" to go grab that "drank."  Your affiant knows "drank" to be a term to reference a drink containing codeine syrup.  Both individuals discuss "bars" and "percs".  Your affiant knows these terms to be a reference to prescription opioid pills.  BROOKS stated he "got a guy" that goes to pharmacies in "small ass towns" for "percs."  Cortez asks BROOKS to "lock in" the individual.  BROOKS stated he already has the individual "locked in."  Cortez inquired about "suboxone strips."  Your affiant knows these to be prescription opioids which come in strip form.  Cortez and BROOKS discuss how to obtain opioids and who to sell them throughout the phone call.  Additionally, both Cortez and BROOKS discuss "dog" which is "untouched."  Your affiant knows "dog" to be a term to reference heroin.  BROOKS stated he had previously taken "Bo" a "sample of that shit."  Cortez and BROOKS then discuss prices for "dog" and who they can sell it to.  Cortez and BROOKS both discuss an individual they have both contacted.  Cortez stated he does not want BROOKS "dealing and dabbling" and wants others to do it.

36.     On 10/19/2023 case agents conducted a "trash pull" at 4710 N. 30th St, in Milwaukee, WI.  Your affiant knows this address to be associated with Torion BROOKS and Taniya Thurman.  Case agent located in a trash can related to the residence a food delivery

receipt. The receipt was dated 10/16/2023 at 5:13pm. The "name" on the receipt was "Brooks Bros." The receipt also displayed the phone number 872-243-4797.

## SURVEILLANCE OF TORION BROOKS

37.    On 10/20/2023 case agents conducted surveillance of the residence at 4710 N. 30th St. Case agents observed Taniya THURMAN lean out of the front door of the residence of 4710. Thurman looked both north and south down the street and appeared to check the mailbox for mail. Thurman then went back inside the residence.

38.    A short time later, a male who case agents recognized as Torion BROOKS exited the residence through the rear door on the south side of the residence. BROOKS appeared to be carrying keys and walked to a vehicle parked in the alleyway behind the residence. Your affiant knows this vehicle to be registered to Taniya Thurman and BROOKS to drive this vehicle.

39.    Case agents observed BROOKS leave the residence in a vehicle. Case agents lost sight of BROOKS and attempted to locate the vehicle but could not do so. Case agents monitored the ping data provided from 872-243-4797, which appeared to show data consistent with the device moving. A short time later, the vehicle BROOKS was observed driving was parked behind 4710 N 30th St and was unoccupied.

## TRAVEL BY TORION BROOKS

40.    Through the monitoring of jail phone calls and previously obtained ping data, Torion BROOKS is known to travel through the states of Wisconsin, Illinois, and Minnesota. BROOKS is also known to travel with a female identified as Nicole R. Collins. Your affiant knows Collins to reside and in Albert Lea, MN.

41.    Your affiant is aware BROOKS has traveled to Albert Lea, MN approximately two (2) times during the month of October 2023 and stay for extended periods. During that time,

ping data for 872-243-4797 indicated 872-243-4797 to be in the area in and around Albert Lea, MN. Also, during that time BROOKS is known to case agents to have placed phone calls using 872-243-4797 to a phone number associated with Collins as well as been present with Collins in Albert Lea, MN after review of jail phone calls made by Cortez BROOKS to 872-243-4797.

42.     Your affiant is aware of jail phone calls from Fox Lake (WI) Correctional Center. The calls were made by a male your affiant knows from previously reviewed jail calls as Cortez Brooks to 872-243-4797. During a call dated 10/23/2023, a male answered who Cortez Brooks calls "Torion." Cortez BROOKS and Torion BROOKS discuss Cortez Brooks' wife "Nicole" who your affiant knows to be Nicole R. Collins. Cortez Brooks also asked Torion BROOKS when he (Torion) would be returning to Milwaukee. Torion BROOKS also discusses an unknown female who Torion BROOKS identified as "Heather."

43.     In a second call placed by Cortez Brooks to 872-243-4797 on 10/23/2023 the call is answered by a male which sounds similar to the voice from previous phone called referred to as "Torion." The phone is passed to a female referred to by Cortez Brooks as "Nicole." There was also a female referenced in the call and present during the call, identified only as "Heather." Cortez Brooks and "Nicole" argue throughout the call and Cortez Brooks stated "Torion" could drive for her. Torion BROOKS expressed an intent to travel by train to "go back."

**BROOKS, KEVIN WILLIAMS, and JAYLIN ALEXANDER**

44.     Your affiant is aware of Milwaukee Police Department reports related to an armed robbery complaint involving Jaylin K. ALEXANDER (B/M, dob 1998, 10282 W. Fountain Ave, #1300, Milwaukee WI) as a suspect. The armed robbery took place in April of 2022 near 7151 W. Beckett Milwaukee, WI. ALEXANDER is alleged to have robbed the victim, an individual, while armed with what the victim described as an "M4 style rifle." The victim also identified a

second individual as "Anthony" who was armed with what the victim described as a "black handgun." Both individuals used vehicles to box the victim vehicle in, and allegedly stole a wallet from the victim's vehicle.

45.     Your affiant is aware of Milwaukee (WI) Police Department (MPD) reports related to ALEXANDER'S arrest warrant for armed robbery, and a search warrant at 10282 W. Fountain Ave, #1300, Milwaukee, WI, which were executed on 7/19/2023. During this incident, ALEXANDER was observed through a window by MPD inside the residence and entering the southeast bedroom. ALEXANDER was arrested as he exited the residence and was in possession of a cellphone and keys to the residence at 10282 W. Fountain Ave, #1300. MPD officers would later use the keys found on ALEXANDER's person to make entry into the residence to conduct the search warrant. The cellphone on ALEXANDER's person was one (1) blue Apple iPhone, unknown model, Milwaukee Police Department inventory # 23023401, Item #13 (Target Cell Phone #1).

46.     Officers executed a search at the residence.

47.     In the northwest bedroom, officers located bags of suspected cannabis and two (2) Wisconsin ID cards for ALEXANDER in a black tote. Officers also located ALEXANDER's diploma, and pieces of mail addressed to ALEXANDER to include a WE-Energies bill for 10282 W Fountain Av #1300. It should be noted, other pieces of United States mail were in the kitchen and the living room of the residence bearing the Fountain Ave address for ALEXANDER.

48.     In the southeast bedroom, officers found a wallet containing cards for Anthony A. PUGH Jr. (B/M DOB 1997), a social security card, and United States Postal Service Priority mail for PUGH.

13

49.     In the southeast bedroom, police recovered an un-marked black and green AR-15 pistol equipped with a drum style magazine, a Century Arms AK pistol, a Smith & Wesson revolver, and ammunition. In the northwest bedroom, MPD located suspected marijuana, Tetrahydrocannabinol (THC) vape cartridges, and suspected "Magic Psilocybin Mushrooms." Throughout the living room, kitchen, and the two bedrooms, officers located packaging materials, a digital gram scale, plastic sandwich bags/vacuum sealed bags, and a large quantity of U.S. Currency. The recovered items indicate street-level narcotics distribution, as well as using the residence to manufacture, store, and sell narcotics.

50.     The firearms and illegal narcotics that were in the residence were visible and accessible to any person who entered the residence. The entire residence was open and accessible to ALEXANDER or Pugh, and their identifiers were in several places within the residence. Your Affiant is aware that drug users and armed robbers will often keep their firearms and illegal narcotics in their residences and within proximity to each other for protective reasons.

51.     Your affiant is aware of MPD reports, photos and inspected the AR-15, which was recovered during the search warrant at ALEXANDER'S residence, and it appeared to be similar in size and caliber as the ones described by BROOKS in previously reviewed jail phone calls, and AR-15 parts that he ordered from CBC.

**TORION BROOKS'S USE OF SUBJECT VEHICLE 1**

52.     Your affiant is aware of recorded video calls from Fox Lake Correctional institution placed by Cortez BROOKS.  In a video call made on 9/5/2023, the call is answered by a male recognized as Torion BROOKS.

14

53.     During the same video phone call, Cortez BROOKS asked Torion BROOKS "where you at?" Torion BROOKS stated he is in "Nichole's car." Your affiant knows **SUBJECT VEHICLE 1** to be registered to Nichole BROOKS.

54.     Your affiant is aware of documentation of a traffic stop made by the Minnesota State Patrol on September 20, 2023, of **SUBJECT VEHICLE 1**. The traffic stop took place in the area of Interstate 90 and exit #179 near Austin, MN. During this stop, Torion BROOKS was the driver of **SUBJECT VEHICLE 1** and Nichole BROOKS was the passenger in the vehicle.

55.     Your affiant is aware that bodycam footage from the traffic stop showed Nichole BROOKS identified **SUBJECT VEHICLE 1** as her vehicle and Torion BROOKS as her "nephew." Torion BROOKS identified himself with an Illinois driver's license and was released from the stop with a warning for speeding.

56.     Your affiant is aware of jail phone calls made by Cortez Brooks to 872-243-4797 dated September 21, 2023. Your affiant knows this number to be used by Torion BROOKS and the call was answered by a male referenced as "Torion." Torion BROOKS stated he was "pulled over". Torion BROOKS also stated Nichole BROOKS was "antsy" and driving "100 hours" you will get pulled over. Torion BROOKS further stated about the traffic stop "that shit come with the life, mother fucking traffic stops."

57.     Cortez BROOKS also contacted Nichole BROOKS on September 21, 2023. Nichole BROOKS and Cortez BROOKS discuss being pulled over. Both begin to argue over issues with **SUBJECT VEHICLE 1**, use of **SUBJECT VEHICLE 1**, and Torion BROOKS being pulled over. Nichole BROOKS described Torion BROOKS as "careless" and needs to "slow down." Nichole BROOKS also stated during the call regarding **SUBJECT VEHICLE 1** "I lose this, I'm fucked, I'm not trying to do no penitentiary time for some bullshit."

58.     On October 26, 2023, Your Affiant conducted surveillance of Torion BROOKS and Nichole BROOKS. Cellular "ping" data showed BROOKS' device to travel from Albert Lea, MN east on I-90 towards Wisconsin. At approximately 4:04PM in the area of Interstate-94 at Rawson Rd. in the County of Milwaukee, State of Wisconsin, Your Affiant observed **SUBJECT VEHICLE 1** traveling south towards Chicago on Interstate-94. Your Affiant also observed **SUBJECT VEHICLE 1** to be driven by Torion BROOKS, and a female recognized by your affiant as Nichole BROOKS in the front passenger seat. Cellular "ping" data showed the cellular device related to Torion BROOKS continued to the Chicago, IL. The device later traveled back to Albert Lea, MN and arrived at approximately 6:35 AM on October 27, 2023.

59.     On October 30, 2023, your affiant responded to Fox Lake Correctional Institution in Fox Lake, WI. Upon arrival, your affiant located a white Chevrolet Equinox bearing Minnesota license plate JRP-840. (**SUBJECT VEHICLE 1**) Your affiant knows this vehicle to be driven by both Torion BROOKS and Nichole BROOKS between Albert Lea, MN, Milwaukee, WI, and Chicago, IL. While conducting surveillance, case agents observed a male recognized as Torion BROOKS enter the driver's seat of **SUBJECT VEHICLE 1** and drive to the front door of the facility. A female recognized by case agents as Nichole BROOKS entered the front passenger seat of **SUBJECT VEHICLE 1** and the vehicle drove away from the facility.

60.     Case agents conducted surveillance and observed **SUBJECT VEHICLE 1** travel from Fox Lake Correctional Institution to Milwaukee, WI. Case agents observed **SUBJECT VEHICLE 1** travel to the area of 722 N. Water St in Milwaukee and park on the street. Torion BROOKS exited the driver's seat of **SUBJECT VEHICLE 1** and entered a business, and Nichole BROOKS remained in **SUBJECT VEHICLE 1**. Torion BROOKS was observed by

16

case agents meeting with an unknown black male next to **SUBJECT VEHICLE 1**. The unknown black male turned and walked across the street and entered a business across the street as Torion BROOKS pulled away in **SUBJECT VEHICLE 1**.

61.     Case agents continued surveillance of Torion BROOKS and Nichole BROOKS as **SUBJECT VEHICLE 1** traveled and parked in the roadway near 4060 N. 17th St in Milwaukee, WI. Case agents observed an individual get into the back seat of **SUBJECT VEHICLE 1**. Case agents then observed the same individual emerge from the back seat of **SUBJECT VEHICLE 1** carrying a rectangular box consistent with that of a firearm box. Case agents observed the individual cross the street with the box and appeared to unlock the door at 4060 N. 17th St and enter the residence.

62.     Case agents continued surveillance of **SUBJECT VEHICLE 1** as it traveled to 4710 N 30th St in Milwaukee, WI. Your affiant has observed Torion BROOKS previously at this residence and knows this residence to be used by Torion BROOKS for firearm part deliveries, and other deliveries. Torion BROOKS had previously been observed leaving this address as operator of SUBJECT VEHICLE 2. Case agents observed **SUBJECT VEHICLE 1** parked behind the residence where SUBJECT VEHICLE 2 has been previously observed by case agents parked. Torion BROOKS was observed placing a white box consistent with that of a firearm box in a trashcan next to **SUBJECT VEHICLE 1**.

63.     Your affiant is aware of jail phone calls made from Fox Lake Correctional by Cortez BROOKS to a female your affiant recognized as Nichole BROOKS on 11/12/2023. During the phone call Nichole BROOKS was upset over gasoline not being filled in "the car" by Torion BROOKS. Nichole BROOKS described putting gasoline in the car as "needs to be done"

17

and "part of the agreement." Nichole BROOKS stated she would not allow Torion BROOKS to further use the car if he does not refuel the car.

64.     During the same phone call, Nichole BROOKS stated she is struggling with money and will "end everything." Nichole BROOKS further stated her she should not have to "beg" Torion BROOKS for money and knows Torion BROOKS is making "hundreds of dollars" and can fill her vehicle with gasoline.

65.     Your affiant is aware of jail phone calls made from Fox Lake Correctional Institution by an individual known to your affiant to be Cortez BROOKS on 11/12/2023. The call was placed to an individual which was recognized as Torion BROOKS. Torion BROOKS and Cortez BROOKS discussed the use of Nichole BROOKS' vehicle and paying for gasoline in the vehicle. Torion BROOKS stated he did not want to put gasoline in the vehicle for Nichole BROOKS to use it for "deliveries." Your affiant knows Nichole BROOKS to be a delivery driver for Domino's Pizza in Albert Lea, MN. Torion BROOKS further stated he was asked by Nichole BROOKS to return to Minnesota. Cortez BROOKS and Torion BROOKS discuss getting another residence.

66.     During the same call, Torion BROOKS stated further in regard to gasoline, he would not pay for gasoline for the car for Nichole BROOKS to deliver pizzas. Torion BROOKS also stated he would not pay for gas if Nichole BROOKS is not going to drop off "regular shit."

67.     On 11/20/2023 your affiant reviewed phone calls played by Cortez BROOKS to Nichole BROOKS from Fox Lake (WI) Correctional Institution. In a call placed on 11/20/2023 both Nichole BROOKS and Cortez BROOKS discussed Nichole BROOKS visiting Cortez BROOKS on this day. Both also discussed picking up Torion BROOKS. During one call,

18

background noise was consistent with a GPS notification with directions for Nichole BROOKS to Milwaukee, WI.

68.     On 11/20/2023 case agents conducted surveillance of 4710 N. 30th St, in Milwaukee, WI.   Case agents observed **SUBJECT VEHICLE 1** parked in front of the residence.  A female, recognized by your affiant to be Nichole BROOKS, was seen sitting inside the vehicle.

69.     While conducting surveillance, your affiant observed a male recognized as Torion BROOKS approach **SUBJECT VEHICLE 1.**   BROOKS appeared to open both the rear passenger and driver side doors and lean into **SUBJECT VEHICLE 1.**  Nichole BROOKS appeared to exit **SUBJECT VEHICLE 1** from the driver's seat and move to the front passenger seat.  Torion BROOKS entered the driver's seat of  **SUBJECT VEHICLE 1** and the vehicle left the residence.

70.     Case agents conducted surveillance of **SUBJECT VEHICLE 1** which appeared to drive towards Interstate 43.   Case agents lost sight of **SUBJECT VEHICLE 1 and terminated surveillance.**  Your affiant observed ping data related to a cellular device related to Torion BROOKS.   The device appeared to travel southbound to the Chicago, IL from Milwaukee, WI after surveillance was terminated.  Ping data for the device also indicated the device would later travel back to Albert Lea, MN hours later.

### TORIAN BROOKS'S USE OF SUBJECT VEHICLE 2

71.     On August 4, 2023, and August 5, 2023, Torion BROOKS was observed as operator of a Green 2006 Chevrolet Malibu bearing Wisconsin license plate AUD4705, VIN 1G1ZT51866F269117 (**SUBJECT VEHICLE 2**), by staff at Bear Arms Boutique Shooting Range located at 9653 N Granville Rd, Mequon, WI 53097.  Per Mequon Police (MPD) reports

19

related to a fraud investigation involving purchases by Torion BROOKS on these dates, the Wisconsin license plates had been removed from the vehicle. Staff observed the Wisconsin license plate AUD4705 in plain view, inside the vehicle. The license plate was found to be registered to be vehicle (**SUBJECT VEHICLE 2)** with a registered owner of Taniya Z. Thurman (F, dob 10/30/1999) at 4710 N. 30th St. Milwaukee, WI.

72.     On 10/20/2023 case agents conducted surveillance of the residence at 4710 N. 30th St. Case agents observed Taniya THURMAN lean out of the front door of the residence of 4710. Thurman looked both north and south down the street and appeared to check the mailbox for mail. Thurman then went back inside the residence.

73.     A short time later, a male who case agents recognized as Torion BROOKS exited the residence through the rear door on the south side of the residence. BROOKS appeared to be carrying keys and walked to **SUBJECT VEHICLE 2** in the alleyway behind the residence. Your affiant knows this vehicle to be registered to Taniya Thurman and BROOKS to drive this vehicle.

74.     Case agents observed BROOKS leave the residence driving **SUBJECT VEHICLE 2** as it left the residence. Case agents lost sight of BROOKS and attempted to locate **SUBJECT VEHICLE 2** but could not do so. Case agents monitored the ping data provided from 872-243-4797, which appeared to show data consistent with the device moving in **SUBJECT VEHICLE 2**. A short time later, **SUBJECT VEHICLE 2** was observed parked behind 4710 N 30th St and was unoccupied.

75.     On December 14, 2023, Case agents conducted surveillance at 4710 N 30th St. Cellular "ping" data showed BROOKS to be in or near that address. Case agents observed BROOKS exit the rear/side door and enter **SUBJECT VEHICLE 2.** Case agents surveilled

BROOKS as he drove through the Milwaukee and Wauwatosa area. While traveling BROOKS appeared to use counter surveillance techniques. At times BROOKS traveled approximately 20 MPH over the speed limit in residential areas, them slow to the speed limit. BROOKS drove above the speed limit through parking lanes on Appleton Avenue to pass all lanes of traffic causing any vehicles following him to be easily recognized. BROOKS also used the spaces between cement parking outcroppings to pass vehicles. This would cause any vehicle following him to stop abruptly or risk vehicle damage by striking the curbed outcroppings. As BROOKS entered the 8400 Block of W. Auer Ave. he made several repeated U-turns in a short distance. This would cause any vehicles following him to stand out as they attempted to replicate his path. BROOKS traveled to the Jetz gas station located at the intersection of S. 70th St. and Main St. in the City of Wauwatosa. BROOKS again used techniques consistent with countersurveillance as he parked at the pumps facing S. 70th St. but did not pump gas. This is in a manner where he could observe both the intersection and the parking area for vehicles. SA Kozelek observed BROOKS exit the vehicle and enter the store. He exited a few moments later without anything visible in his hands. BROOKS entered the driver seat and exited the gas station lot. BROOKS traveled east on Main St. where SAs lost sight of him.

## **CONCLUSION**

76.     Torion Brooks's use of **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** will assist the affiant in collecting location data for the suspect. The suspect is using the vehicles to further his fraud and illegal firearms activity, and law enforcement's ability to track the location of the vehicle will assist in identifying travel patterns, delivery locations, coconspirators, and other locations where illegal activities are being conducted.

21

## AUTHORIZATION REQUEST

77.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 authorizing periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

78.     It is further requested that in the event that **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** travel outside the territorial jurisdiction of the court, the order authorizes the continued monitoring of the electronic tracking devices in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

79.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the owner or user of **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).